IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DR. TIMOTHY GADSON,<br><br>    Plaintiff,<br><br>v.<br><br>HENRY COUNTY SCHOOL DISTRICT, JOSH HINTON (Individually), DR. PAM NUTT (Individually),  and HOLLY COBB (Individually),<br><br>    Defendants. | Civil Action No.:<br>1:19-cv-02872-MLB-JKL<br><br><br>JURY TRIAL DEMANDED |

## FIRST AMENDED COMPLAINT FOR DAMAGES

Plaintiff Dr. Timothy Gadson ("Plaintiff" or "Dr. Gadson") files this First

Amended Complaint for Damages,[1] showing the Court as follows:

## NATURE OF COMPLAINT

1. Dr. Gadson invokes the jurisdiction of this Court and brings race

discrimination and retaliation claims for violations of Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), and the

---

[1] Defendants' "Pre-Answer Partial Motion to Dismiss" (Dkt. 4) challenging portions of Plaintiff's original Complaint should therefore be denied as moot.

Fourteenth Amendment to the United States Constitution as enforced through 42 U.S.C. §1983, and 42 U.S.C. §1981.

## ADMINISTRATIVE PROCEDURES

2. Dr. Gadson fulfilled all conditions necessary to proceed with these claims under Title VII by timely filing a charge of discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC").

3. Dr. Gadson timely files his Title VII claims in this action within 90 days of receipt of the May 8, 2019 Notice of Right to Sue issued by the U.S. Department of Justice Civil Rights Division and the EEOC.

4. Dr. Gadson has complied with all other conditions precedent to bringing the claims in this action.

## JURISDICTION AND VENUE

5. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

6. The unlawful employment practices alleged in this First Amended Complaint were committed within this district and Defendants reside in the district.  In accordance with 28 U.S.C. § 1391(b), venue is appropriate in this Court.

## **PARTIES**

7. Dr. Gadson is an African-American citizen of the United States of America and subjects himself to the jurisdiction of this Court.

8. Defendant Henry County School District ("HCSD") is subject to the jurisdiction of this Court. HCSD is governed by the Henry County Board of Education and may be served with process by service upon its current Chair, Josh Hinton, and/or its current Superintendent, Dr. Mary Elizabeth Davis, at 33 North Zack Hinton Parkway, McDonough, Georgia 30253.

9. At all times relevant Defendant HCSD has employed fifteen (15) or more employees for the requisite duration under Title VII and is an "employer" within the meaning of Title VII. During the relevant time period Defendant HCSD employed more than 500 employees.

10. Defendant HCSD is a public school system responsible for the government, control and management of the public schools in Henry County, Georgia.

11. Defendant Josh Hinton ("Mr. Hinton") is currently the Chair of the Henry County Board of Education which governs HCSD. Mr. Hinton has been a member of the Henry County Board of Education since 2012. Mr. Hinton can be served with process at 33 North Zack Hinton Parkway, McDonough, Georgia 30253.

12. Defendant Pam Nutt ("Dr. Nutt") was the Chair of the Henry County Board of Education in 2017.  Dr. Nutt has been a member of the Henry County Board of Education since 1977.  Dr. Nutt can be served with process at 33 North Zack Hinton Parkway, McDonough, Georgia 30253.

13. Defendant Holly Cobb ("Ms. Cobb") has been a member of the Henry County Board of Education since January 1, 2017.  Ms. Cobb can be served with process at 33 North Zack Hinton Parkway, McDonough, Georgia 30253.

## STATEMENT OF FACTS

14. In 2017 then HCSD Superintendent Rodney Bowler ("Mr. Bowler") (Caucasian) announced his intent to retire.  HCSD announced it would use a search agency, the Georgia School Board Association, for assistance filling the Superintendent position upon Mr. Bowler's departure.

15. Prior to 2017 HCSD had not used a search agency to seek qualified applicants for a Superintendent opening; instead, it had traditionally used its in-house departments to find candidates.

16. Mr. A. J. "Buddy" Welch, Jr. ("Mr. Welch") was an attorney retained by the HCSD from time to time to act as its legal counsel.  Mr. Welch represented the Henry County Board of Education and/or HCSD as its school board

attorney for more than two decades. HCSD retained Mr. Welch in connection with its search for a new school Superintendent in 2017, and Mr. Welch acted as HCSD's agent at all relevant times for purposes of Dr. Gadson's claims. In the alternative, although Mr. Welch was not properly retained by HCSD for purposes of the 2017 Superintendent search, HCSD ratified Mr. Welch's actions as its agent during and after the search process.

17. Prior to 2017 Dr. Nutt (Caucasian), Mr. Welch (Caucasian), and/or others Caucasians employed by HCSD were involved in hand selecting individuals to fill Superintendent openings for HCSD.

18. To date every HCSD Superintendent has been Caucasian.

19. In May 2017 Dr. Gadson (African-American) timely applied for the HCSD Superintendent position. The Georgia School Board Association provided the Henry County Board of Education with nearly forty (40) candidates for the position, including Dr. Gadson.

20. On June 27, 2017, HCSD publicly named Dr. Gadson the "sole finalist" for the Superintendent position based on the Henry County Board of Education's 4-1 vote. Mr. Hinton voted against naming Dr. Gadson the only finalist. The Henry County Board of Education could have chosen multiple finalists for the

Superintendent position but instead presented only Dr. Gadson to the community as the finalist.

21. Dr. Nutt publicly stated that thirty-seven (37) candidates had applied for the position but that Dr. Gadson alone "stood out."

22. Dr. Gadson would have been the first African-American to hold the HCSD Superintendent position. After the public announcement of Dr. Gadson as the sole finalist, Dr. Nutt advised Dr. Gadson that "some" were not happy about Dr. Gadson being identified as the sole finalist and specifically referenced negative posts on HCSD's Facebook page, including posts which identified Dr. Gadson's race as a negative concern.

23. After the public's negative, race-based posts on HCSD's Facebook page, on June 28, 2017, Dr. Nutt asked Dr. Gadson to participate in a Town Hall Forum to give the public an opportunity to meet him. The next day Dr. Nutt asked Dr. Gadson to participate in a total of three Town Hall Forums. On July 1, 2017, Dr. Nutt asked Dr. Gadson to participate in a fourth Town Hall Forum.

24. Although Ms. Cobb had initially voted in favor of Dr. Gadson as the sole finalist for the Superintendent position, by July 1, 2017, Ms. Cobb was expressing her intent to change her upcoming vote for final approval of Dr.

6

Gadson in light of what Ms. Cobb referred to as her community's negative "pressure" that she was hearing about Dr. Gadson's race. Ms. Cobb was expressing her intent to vote against Dr. Gadson because of his race.

25. On June 28, 2017, a meeting was held at McDonough Presbyterian Church, where Mr. Welch and Mr. Hinton were members, to discuss a "plan" to prevent Dr. Gadson from being finally approved to be the next HCSD Superintendent because of his race. The "plan" was motivated by intentional race discrimination on the part of the community and the plan participants. At the meeting it was openly discussed that Mr. Hinton would prevent Dr. Gadson from becoming Superintendent by making a motion to rescind the contract offer to Dr. Gadson before any vote to approve Dr. Gadson's contract, and that the Caucasian members of the Henry County School Board would support the motion to rescind.

26. Dr. Nutt had knowledge of this meeting and plan prior to July 10, 2017.

27. Mr. Welch had knowledge of this meeting and plan prior to July 10, 2017.

28. Mr. Hinton had knowledge of this meeting and plan prior to July 10, 2017.

29. Ms. Cobb had knowledge of this meeting and plan prior to July 10, 2017.

30. On July 1, 2017, Dr. Nutt also told Dr. Gadson again that she was concerned about the negative posts about him on Henry County Schools' Facebook page

(which included negative reference to his race) and advised Dr. Gadson that Mr. Hinton and Ms. Cobb were upset and/or getting "pressure" from the community to vote against Dr. Gadson.

31. On July 1, 2017, Dr. Gadson complained to Dr. Nutt that he was disappointed that no one was addressing the racially discriminatory comments being posted about him on the Henry County Schools Facebook page and that he was concerned that no one was correcting disinformation posted about him on the Henry County Schools Facebook page. Dr. Gadson expressed his concern to Dr. Nutt that members of the Henry County School Board appeared to be wavering about his selection for Superintendent because of his race. Dr. Gadson stated his concern that a failure to appoint him by the Board would be in response to racially-motivated opposition to him. Dr. Nutt did not investigate and her only response was to "assure" Dr. Gadson that she believed the final vote to appoint him would be 3-2 in his favor.

32. No candidate or finalist for a HCSD Superintendent position prior to Dr. Gadson had ever been required to participate in one, much less four, Town Hall Forums. After Dr. Gadson's participation in the four Town Hall Forums between July 6-8, 2017, no one at HCSD identified any concern with Dr. Gadson's performance at those public meetings. In fact, Dr. Nutt texted Dr.

Gadson after the public forums, "Great job, get some rest."  No candidate or finalist for HCSD Superintendent since Dr. Gadson has been required to participate in four Town Hall Forums prior to a final selection decision.

33. Mr. Welch claimed to be acting as HCSD's attorney.  He presented Dr. Gadson, the sole finalist, and his counsel with a proposed employment contract on June 30, 2017.  The proposed contract was for an 18-month term, although previous HCSD Superintendents had minimum contract terms of 36 months.  Despite her multiple requests, Mr. Welch intentionally delayed providing Dr. Gadson's attorney with a copy of Mr. Bowler's existing contract.

34. Dr. Gadson's counsel requested additional information from Mr. Welch and then provided a response to the draft contract and invited additional discussion but Mr. Welch did not respond.  Mr. Welch, acting in concert with and/or at the direction of the individual Defendants, did not negotiate the contract terms with Dr. Gadson's counsel in good faith.

35. On July 7, 2017, Dr. Gadson advised Dr. Nutt that Mr. Welch was not communicating with his attorney and was not negotiating the contract terms with his attorney.  Later the same day Mr. Welch emailed Dr. Gadson's counsel, stating Dr. Gadson's response was "$500,000.00 more than the

Board is presently obligated to pay.  Please have your client reconsider his request.  I will be in touch next week."  Dr. Gadson's attorney responded at 4:11 p.m. the same day, "I am writing to follow up to see if you want to talk about the draft I sent you on Wednesday night.  I am available if you would like to talk," but Mr. Welch did not respond, continuing to refuse to negotiate the contract terms with Dr. Gadson's counsel in good faith.

36. Defendants intended to rescind the contract offer to Dr. Gadson on the basis of his race before any contract could be finalized.

37. Dr. Gadson's attorney emailed Mr. Welch again on July 9, 2017, expressing her confusion as to Mr. Welch's "$500,000.00" comment and asking whether Mr. Welch had "some time to discuss our proposed revisions," but instead she received a response from Mr. Welch that he needed "to know today what your client is willing to strike from his requests."  Dr. Gadson's attorney emailed Mr. Welch again the same evening stating, "we look forward to hearing from you tomorrow once you have met with the Board to discuss our proposed revisions and to hear the Board's concerns and issues."

38. Although Mr. Welch did not respond to Dr. Gadson's attorney's requests on July 9, 2017, Mr. Welch was in contact with Defendants who together were conspiring to ensure the votes of the Caucasian Henry County School Board

members – Dr. Nutt, Mr. Hinton, and Ms. Cobb – would be to rescind Dr. Gadson's contract offer.  Mr. Welch's, Mr. Hinton's, Dr. Nutt's, and Ms. Cobb's communications with each other outside the presence of the entire Henry County School Board (which included the two African-American Board members) during this critical time period, were motivated by their own intentional race discrimination and retaliation, the racial bias expressed by Henry County constituents who were enraged by the identification of an African-American as the sole finalist, Dr. Gadson's complaints of discrimination, and malicious intent to derail Dr. Gadson's selection despite his admittedly superior qualifications and identification as the sole finalist from a field of more than thirty candidates.  Their communications outside the presence of the entire Henry County School Board were in violation of HCSD's policies and procedures and school board governance.

39. Without investigation, Defendant Dr. Nutt on behalf of herself and Defendant HCSD specifically issued a public statement after July 10, 2017 that "our attorney," referring to Mr. Welch, "has followed the direction of the majority of the Board through this process."

40. Despite any representations to the Henry County School Board members that he made any attempt to negotiate the contract terms with Dr. Gadson

and/or his counsel, Mr. Welch never intended to and did not negotiate the proposed contract terms with Dr. Gadson and/or his attorney.  Mr. Welch repeatedly failed to respond to Dr. Gadson's attorney's requests as to any specific concerns over the proposed revisions to the contract.  Mr. Welch's failure to negotiate was at the direction of and/or ratified by Defendants and designed to induce HCSD to rescind the offer of employment to Dr. Gadson due to intentional race discrimination or retaliation, and a malicious intent to injure Dr. Gadson.

41. Dr. Nutt's, Mr. Hinton's and Ms. Cobb's knowledge that Mr. Welch was not negotiating with Dr. Gadson and was misrepresenting the status of any "negotiations" was designed to induce HCSD to rescind the offer of employment to Dr. Gadson and was based on intentional race discrimination or retaliation, and a malicious intent to injure Dr. Gadson.

42. On or before July 10, 2017 and thereafter, Mr. Welch, at the direction of Defendants and/or motivated by intentional race discrimination and retaliation, maliciously misrepresented the nature and content of his purported contract "negotiations" with Dr. Gadson as well as Dr. Gadson's purported contractual demands in communications with Dr. Nutt, Mr. Hinton, Ms. Cobb, and the Henry County Board of Education's two African-American members,

Donna McBride ("Dr. McBride") and Annette Edwards ("Ms. Edwards"), and in communications disseminated to the public.

43. Just as had been planned at the June 28, 2017 church meeting to prevent Dr. Gadson from becoming the first African-American Superintendent of HCSD, on July 10, 2017 following a short executive session, a "public" (but not publicized) meeting of the Henry County Board of Education was held wherein Defendant Hinton made a motion to rescind Dr. Gadson's offer, and Defendant Cobb seconded the motion. The Henry County Board of Education then voted 3-2 along race lines (Defendants Dr. Nutt, Mr. Hinton, and Ms. Cobb in favor) to rescind Dr. Gadson's offer.

44. The two African-American members of the Henry County School Board publicly denied that the contract terms were ever actually negotiated with Dr. Gadson. On July 11, 2017, Dr. McBride stated "I am very ashamed that we did not do what we should have done," and said the Henry County School Board was in violation of its own policy because negotiations with Dr. Gadson did not take place. Defendants failed to investigate these concerns.

45. The two African-American members of the Henry County Board of Education publicly denied that Mr. Welch had ever been vested with authority to present and/or negotiate the contract with Dr. Gadson on behalf of the

Henry County School Board or HCSD.  To the extent any individual members of the Henry County Board of Education attempted to vest Mr. Welch with such authority, such attempt was in violation of HCSD's own policies and procedures as well as applicable school board governance requirements. Defendants failed to investigate these concerns.

46. The two African-American members of the Henry County Board of Education publicly stated that they had to make repeated requests to be provided with a copy of the contract presented to Dr. Gadson and were never made aware of the actual terms of any response to the contract offer made by Dr. Gadson during the executive session of the Henry County Board of Education held immediately prior to the vote to rescind Dr. Gadson's contract. Defendants failed to investigate these concerns.

47. On Friday, July 7, 2017, Defendant HCSD posted a notice of a July 10, 2017 executive session of the Henry County School Board.  Although HCSD regularly publishes the Henry County School Board's public meeting dates in the local paper, on its Facebook page, and on its webpage in accord with the requirements of its own procedures and applicable regulations, no public notice of the Henry County School Board's public meeting on July 10, 2017 was ever posted in these venues.  Defendants intentionally violated school

board policies in their effort to prevent Dr. Gadson from being named Superintendent.

48. After the July 10, 2019 public meeting of the Henry County School Board, Dr. Gadson communicated to Dr. Nutt by phone and text message the same day that the contract terms were never negotiated, but Dr. Nutt did not respond. Defendants failed to investigate this concern.

49. State Senator Emanuel Jones and State Representatives Sandra Scott, Pam Stephenson, and Demetrius Douglas submitted a July 14, 2017 letter to Governor Nathan Deal complaining that it "has become apparent to me that Dr. Gadson's contract was rescinded simply because of his race," and that the Henry County School Board is "dysfunctional and polarized racially." The letter was immediately published by the media. The letter explained that "immediately after the announcement" of Dr. Gadson as the sole finalist for the HCSD Superintendent position, "certain members of the community because enraged because Dr. Timothy Gadson was an African American," "it is quite clear that Henry County School board's attorney had ill intent nor was he ever willing to actively negotiate a contract for Dr. Gadson," and "[a]s the county becomes more diverse, as evidence by the school system being

majority minority, certain elements in Henry County seek to cling to its segregated past." Defendants failed to investigate these concerns.

50. Dr. Gadson notified Dr. Nutt on July 11, 2017 that he would accept the original contract presented by Mr. Welch but Defendants did not permit him to do so because of his race or in retaliation for the complaints of race discrimination.

51. The Henry County Board of Education had a regularly scheduled public meeting on July 11, 2017. During the meeting members of the public expressed their support for Dr. Gadson and expressed the belief that HCSD's contract offer to Dr. Gadson had been rescinded because of his race. State Senator Emanuel Jones publicly complained during the meeting that Defendants were discriminating against Dr. Gadson by not negotiating the contract with him and/or voting to rescind the contract offer on the basis of his race. Defendants failed to investigate these concerns.

52. During the July 11, 2017 meeting and after the complaints that Dr. Gadson was being discriminated against, Dr. McBride made a motion to enter executive session to reconsider a contract offer for Dr. Gadson, and Ms. Edwards seconded the motion. The Henry County Board of Education denied the motion in a 3-2 vote along racial lines, with Defendants Dr. Nutt, Mr.

Hinton, and Ms. Cobb exercising their ministerial functions to vote against a motion to enter executive session.

53. Dr. Gadson attended the Henry County School Board's July 11, 2017 meeting and expressed both his continued interest in the position and his willingness to accept the proposed contract Mr. Welch had given him without revision.

54. After July 10, 2017, Defendants made false and defamatory statements that were injurious to Dr. Gadson's trade and exposed him to ridicule or contempt, made without privilege and in bad faith, and disseminated to the public about Dr. Gadson. For example, Defendants made false statements to the public about Dr. Gadson's contract "demands;" publicly (and falsely) stated that Dr. Gadson's "intentions were not in the best interest of our students," publicly (and falsely) stated that "the Board did not feel comfortable making the taxpayers of the county liable for $500,000, more than any other superintendent had received in the county's history (which Dr. Gadson's counteroffer would have)," publicly and falsely stated that Dr. Gadson's "contract requests were over $500,000 more than the Board's original proposal which was based on Mr. Bowler's existing contracted financial liabilities," publicly disseminated a purported "breakdown of the financial review of Mr. Bowler's current contract and the request made by Dr. Gadson"

which contained knowingly false statements, publicly and falsely stated that "there were questions regarding [Dr. Gadson], including his potential involvement with an Atlanta Public Schools grade changing scandal," and publicly and falsely stated "during this same time frame, we became aware that Dr. Gadson had potentially plagiarized the 100-day plan that was so attractive to the Board."

55. HCSD, Mr. Hinton, Dr. Nutt, and Ms. Cobb collectively and individually maliciously published false, misleading, unprivileged, and defamatory statements about Dr. Gadson to members of the public in an effort to cause him injury and caused Dr. Gadson to suffer economic and emotional damages. Their statements were made in bad faith, were not based on any official interest to be upheld (and were based on their own personal discriminatory and/or malicious interests), were unrelated to any legal duty, were not properly limited to any appropriate scope, and were widely published by Defendants after the local media's criticism of Defendants' treatment of Dr. Gadson, Dr. Gadson's complaints of discrimination, and local politicians' public statements on behalf of Dr. Gadson and the community that Defendants were discriminating against Dr. Gadson.

56. Mr. Hinton, Dr. Nutt, Mr. Welch, and Ms. Cobb were agents of Defendant HCSD who conspired with one another to violate Dr. Gadson's known civil rights and subject Dr. Gadson to injury. Mr. Hinton, Dr. Nutt, and Ms. Cobb also individually acted and/or conspired with one another to violate Dr. Gadson's known civil rights. Mr. Hinton, Dr. Nutt, Mr. Welch's and Ms. Cobb's actions were motivated by intentional race discrimination or unlawful retaliation.

57. To the extent any of the individual Defendants and/or Mr. Welch acted without authority, Defendant HCSD took no action to investigate or repudiate such conduct and instead ratified the malicious intent to injure Dr. Gadson and intentionally discriminate against him on the basis of his race and/or retaliate against him on the basis of his protected conduct.

58. After July 10, 2017, HCSD "reopened" and continued the original Superintendent job search with the Georgia School Board Association and announced that applications would continue to be accepted through September 1, 2017. HCSD's job posting for the Superintendent position identified the following as personal qualities required: "Fit for the Position/Community." Defendants further publicly stated their intent after rescinding the contract offer to Dr. Gadson was to "continue the search

process in an attempt to find the best fit and fifteenth superintendent of Henry County Schools."

59. Individuals who originally applied for the Superintendent position prior to May 28, 2017 were not required to reapply.  But Defendants refused to consider Dr. Gadson as a candidate for the Superintendent position after July 11, 2017.

60. Dr. Mary Elizabeth Davis ("Dr. Davis"), who is Caucasian, applied for the Superintendent position prior to HCSD's June 27, 2017 announcement of Dr. Gadson's selection as the "sole finalist."  After review of the applicants' qualifications, Dr. Davis was not selected as a finalist for the Superintendent position prior to July 10, 2017, and Dr. Gadson was instead named the sole finalist in June 2017.

61. HCSD announced its selection of Dr. Davis as Superintendent on October 24, 2017.  Defendants selected Dr. Davis after previously publicly acknowledging Dr. Gadson's qualifications for the position were superior to hers, and to those of any other candidate who had applied.

62. Prior to Dr. Davis's final selection as HCSD Superintendent, she was not required to participate in four Town Hall forums.

63. Defendants considered Dr. Davis a good "Fit for the Position/Community."

64. Defendant Hinton discussed the contract terms offered to Dr. Davis with Dr. Davis outside the presence of the other Henry County School Board members and/or without authorization from the other Henry County School Board members. Defendants and/or Mr. Welch then purported to negotiate the terms of the proposed Superintendent contract with Dr. Davis. The buyout clause of Dr. Davis's original contract with HCSD alone was valued at $639,000.

65. On November 7, 2017 Dr. Gadson served Open Records Requests on HCSD, and HCSD responded in the normal course on November 10, 2017 advising the "total estimated costs for search, retrieval, and redacting the requested documents is **$4,296.48**." On December 6, 2017 Dr. Gadson learned that HCSD's counsel, the law firm of which Mr. Welch was a senior member, would be handing the Open Records Requests instead of HCSD, and Dr. Gadson's counsel responded the same day with a letter that provided a courtesy copy of his filed EEOC Charge to HCSD's counsel. After the copy of Dr. Gadson's EEOC Charge was delivered by email to HCSD's counsel, HCSD's earlier response to the Open Records Request was amended by Mr. Welch's firm, and HCSD instead demanded payment of "**$417,443.38**" for the public records requested, a nearly one hundred-fold increase.

**CLAIMS FOR RELIEF**

**COUNT ONE:  RACE DISCRIMINATION**
**IN VIOLATION OF TITLE VII (Against Defendant HCSD)**

66. Plaintiff realleges the preceding paragraphs.

67. Dr. Gadson applied and was qualified for the Superintendent position for which Defendant HCSD was seeking applicants.

68. Defendant HCSD acknowledged Dr. Gadson's qualifications for the position by selecting him as the "sole finalist" for Superintendent after a nationwide search.  Defendant HCSD did not consider Dr. Davis qualified to be named a finalist at the time Dr. Gadson was named the "sole finalist."

69. Despite Dr. Gadson's qualifications, Defendant HCSD did not hire Dr. Gadson, rescinded its offer of employment to Dr. Gadson, and refused to consider Dr. Gadson during its second, reopened search for a Superintendent.

70. Defendant HCSD selected Dr. Davis, whom it admittedly considered less qualified than Dr. Gadson for the Superintendent position, for the Superintendent position after refusing to hire Dr. Gadson.  Defendant HCSD further subjected Dr. Gadson to different terms and conditions related to the offer of employment when he was named "sole finalist" than those provided to Dr. Davis when she became a finalist.

71. Dr. Gadson's race was a motivating factor in Defendant HCSD's actions against him.

72. In the alternative, Defendant HCSD empowered its agents to subject Dr. Gadson to adverse treatment and/or acted on its agents' discriminatory intent. Dr. Gadson's race was a motivating factor for Defendant HCSD's agents when they falsely and with pretext purported to (but did not) engage in contract negotiations with Dr. Gadson and/or misrepresented the nature and/or status of any such negotiations; its agents intended for their conduct to cause Dr. Gadson to suffer the adverse employment actions at issue, and Defendant HCSD would not have taken the adverse actions against Dr. Gadson in the absence of its agents' actions.

73. In the alternative, Mr. Welch, Dr. Nutt, Mr. Hinton and/or Ms. Cobb were motivated by Dr. Gadson's race in communications with HCSD regarding Dr. Gadson's candidacy and/or purported contract negotiations, they intended by their actions to cause Dr. Gadson to suffer the adverse employment actions at issue, and their actions were a motivating factor in Defendant HCSD's decisions to rescind the offer to Dr. Gadson, subject him to different terms and conditions, and refuse to consider him for the reopened position.

74. In the alternative, consituents served by HCSD exhibited discriminatory animus toward Dr. Gadson based on his race, due to this discriminatory animus those members of the public exerted influence over Defendant HCSD and its agents with the intent of causing HCSD to rescind the contract offer to Dr. Gadson, not select Dr. Gadson, and subject Dr. Gadson to different terms and conditions than Dr. Davis; and this influence of members of the public was a motivating factor in Defendant HCSD's decisions.

75. Defendant HCSD's actions constitute unlawful discrimination on the basis of Dr. Gadson's race in violation of Title VII.

76. Defendant HCSD willfully and wantonly disregarded Dr. Gadson's rights, and its discrimination against Dr. Gadson was undertaken in bad faith.

77. The effect of the conduct complained of has been to deprive Dr. Gadson of equal employment opportunity and to damage his future employment opportunities because of his race.  As a direct and proximate result of Defendant HCSD's violation of Title VII, Dr. Gadson has also been made the victim of acts that have adversely affected his psychological and physical well-being and his professional reputation.  Accordingly, Defendant HCSD is liable for the damages Dr. Gadson has sustained as a result of Defendant HCSD's unlawful discrimination.

**COUNT TWO:  RACE DISCRIMINATION IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AS ENFORCED BY 42 U.S.C. §1983 (Against Defendant HCSD and Defendants Dr. Nutt, Mr. Hinton, and Ms. Cobb in their Individual Capacities)**

78. Plaintiff re-alleges the preceding paragraphs.

79. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution protects Dr. Gadson from being subjected to discrimination on the basis of his race by Defendants acting under color of state law.

80. Defendants rescinded the contract offer to Dr. Gadson, failed to hire Dr. Gadson for the Superintendent position, and treated a similarly situated individual outside the protected class more favorably than Dr. Gadson.  Dr. Gadson's race was a motivating factor in each Defendant's decision.

81. In the alternative, Mr. Welch, Dr. Nutt, Mr. Hinton, Ms. Cobb and/or members of the public were motivated by Dr. Gadson's race when they exerted influence over Defendants with the intent of causing Defendants to rescind the contract offer to and refuse to hire Dr. Gadson and subject him to different terms and conditions; and the influence of these individuals was a motivating factor in Defendants' decisions to take adverse actions against Dr. Gadson.

82. Defendants intentionally deprived Dr. Gadson of his rights to equal protection and freedom from intentional discrimination.  As outlined in the facts above, Defendants willfully and wantonly disregarded the rights of Dr. Gadson, acted with actual malice and/or the intent to cause injury and conspired to and did cause Dr. Gadson personal and professional harm and injury, and Defendants' discrimination against Dr. Gadson was undertaken in bad faith.  Each Defendant named in his/her individual capacity personally participated in the race-based actions and directly impacted Dr. Gadson's rights.

83. The conduct of the individual Defendants violated Dr. Gadson's clearly established statutory and constitutional rights to be free from intentional discrimination of which a reasonable person would have known.  None of the individual Defendants, nor any reasonable public official, could have believed his or her race-based actions outlined in this Complaint were lawful in light of clearly established law.

84. The individual Defendants each knew that Dr. Gadson's federally protected right to be free from intentional discrimination was substantially likely to be harmed by his/her conduct, understood the need to correct such violation(s), and failed to act on that likelihood.  Each of the individual Defendants as a

member of the Henry County School Board had authority to address the alleged discrimination and/or take corrective measures on behalf of HCSD, had actual knowledge of the race discrimination against Dr. Gadson, and failed to adequately address the race discrimination or otherwise respond. Each individual Defendant's act(s) as Henry County School Board members further constituted an official decision by Defendant HCSD not to remedy the discriminatory conduct.

85. As a result of Defendants' discriminatory conduct, Dr. Gadson has suffered damages, emotional distress, inconvenience, humiliation, damage to his professional reputation and career, and other indignities.

## COUNT THREE: RACE DISCRIMINATION IN VIOLATION OF SECTION 1981 AS ENFORCED THROUGH SECTION 1983 (Against Defendants)

86. Plaintiff re-alleges the preceding paragraphs.

87. Defendants' acts of intentional race discrimination outlined in and sustained by Dr. Gadson in Count II of this Complaint also infringed on Dr. Gadson's federally-protected rights under 42 U.S.C. §1981 to be free from race discrimination.  Defendants, collectively and each of them individually, acted to rescind the contract offer to Dr. Gadson, failed to hire him for the Superintendent position, and subjected him to different terms and conditions.

Dr. Gadson's race was a motivating factor in each Defendant's adverse actions.

88. In the alternative, Mr. Welch, Dr. Nutt, Mr. Hinton, Ms. Cobb and/or members of the public were motivated by Dr. Gadson's race when they exerted influence over Defendants with the intent of causing Defendants to rescind the contract offer to and refuse to hire Dr. Gadson and subject him to different terms and conditions; and the influence of these individuals was a motivating factor in Defendants' decisions to take adverse actions against Dr. Gadson.

89. Defendants willfully and wantonly disregarded Dr. Gadson's rights, and Defendants' discrimination against Dr. Gadson was undertaken in bad faith.

90. As a result of Defendants' discriminatory conduct, Dr. Gadson has suffered damages, emotional distress, inconvenience, humiliation, damage to his professional reputation and career, and other indignities.

## COUNT FOUR:  RETALIATION IN VIOLATION OF TITLE VII (Against Defendant HCSD)

91. Plaintiff re-alleges the preceding paragraphs.

92. Dr. Gadson's complaints to Defendant HCSD about race discrimination and complaints of race discrimination made on Dr. Gadson's behalf and with his knowledge constitute conduct protected under Title VII.

93. Defendant HCSD's adverse actions, including, but not limited to rescinding Dr. Gadson's contract offer, refusing to reconsider the rescission and/or to consider Dr. Gadson for the Superintendent position after July 10, 2017, subjecting Dr. Gadson to different terms and conditions than similarly situated comparators outside his protected class, and making false and defamatory statements about Dr. Gadson, each/all because of the complaints of race discrimination constitute unlawful retaliation in violation of Title VII.

94. In the alternative, Mr. Welch, Dr. Nutt, Mr. Hinton, Ms. Cobb and/or members of the public were motivated by the complaints of race discrimination when they exerted influence over Defendant HCSD with the intent of causing Defendant HCSD to refuse to hire Dr. Gadson and subject him to different terms and conditions; and the influence of these individuals was a motivating factor in Defendant HCSD's decision to take adverse actions against Dr. Gadson.

95. As a direct and proximate result of Defendant HCSD's retaliatory actions, Dr. Gadson has suffered economic and non-pecuniary damages.

96. Defendant HCSD willfully and wantonly disregarded Dr. Gadson's rights, and its actions toward Dr. Gadson were undertaken in bad faith.

97. Defendant HCSD is therefore liable for damages proximately resulting from its retaliation against Dr. Gadson.

## COUNT FIVE:  RETALIATION IN VIOLATION OF SECTION 1981
### (Against All Defendants)

98. Plaintiff re-alleges the preceding paragraphs.

99. Dr. Gadson's complaints to Defendants about race discrimination and complaints of race discrimination made on Dr. Gadson's behalf and with his knowledge constitute conduct protected under 42 U.S.C. §1981.

100.    Defendants' adverse actions, including, but not limited to actively participating in a scheme to retaliate against Dr. Gadson, refusing to negotiate and/or rescinding Dr. Gadson's contract offer, refusing to reconsider the rescission and/or to consider Dr. Gadson for the Superintendent position after July 10, 2017, subjecting Dr. Gadson to different terms and conditions than others outside his protected category, and making false and defamatory statements about Dr. Gadson, each/all because of the complaints of race discrimination constitute unlawful retaliation in violation of 42 U.S.C. §1981.

101.    In the alternative, Mr. Welch, Dr. Nutt, Mr. Hinton, Ms. Cobb and/or members of the public were motivated by the complaints of discrimination when they exerted influence over Defendants with the intent of causing Defendants to rescind the contract offer to and refuse to hire Dr. Gadson and

subject him to different terms and conditions; and the influence of these individuals was a motivating factor in Defendants' decisions to take adverse actions against Dr. Gadson.

102.    As a direct and proximate result of Defendants' actions, Dr. Gadson has suffered economic and non-pecuniary damages.

103.    Defendants willfully and wantonly disregarded Dr. Gadson's rights, and their actions toward Dr. Gadson were undertaken in bad faith.

104.    Defendants are therefore liable for damages proximately resulting from its/his/her retaliation against Dr. Gadson.

## **PRAYER FOR RELIEF**

Dr. Gadson demands a TRIAL BY JURY and the following relief:

(a)    A declaratory judgment that Defendant(s) violated Title VII, Sections 1981 and 1983, and the Equal Protection clause of the Fourteenth Amendment to the U.S. Constitution;

(b)    An injunction restraining Defendant(s) and their officers, agents, employees, successors, and any other persons acting in concert with them, from continuing to maintain practices and policies of discrimination on the basis of race;

31

(c)     Damages equal to the amount of time, lost pay and benefits, lost opportunities, and expenses suffered by Dr. Gadson due to the unlawful discrimination and/or retaliation perpetrated by Defendant(s), with prejudgment interest;

(d)     Compensatory damages in an amount to be determined by a jury for Dr. Gadson's emotional distress, loss of professional reputation, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(e)     Punitive damages where permitted by statute in an amount to be determined by a jury to punish those Defendant(s) for their conduct toward Dr. Gadson sufficient to deter those Defendant(s) from similar conduct in the future;

(f)     A declaratory judgment naming Dr. Gadson Superintendent of HCSD and affording him all of the benefits of the three-year contract currently in place for the current Superintendent or front pay in lieu of same;

(g)     Reasonable attorneys' fees and costs where permitted by statute;

(h)     Trial by jury as to all issues so triable; and

(i)     Such additional relief as the Court deems proper and just.

Respectfully submitted, this 12th day of August, 2019.

/s/Tracey T. Barbaree
Tracey T. Barbaree
GA Bar No. 036792
Beth A. Moeller
GA Bar No. 100158
MOELLER BARBAREE LLP
181 14th St. NE, Suite 401
Atlanta, GA 30309
Phone: 404.748.9122

*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of August, 2019, I electronically filed Plaintiff's First Amended Complaint with the Clerk of Court using the CM/ECF system, which will send notice of such filing to the following attorneys of record:

Charles L. Bachman, Jr.
Brandon C. White

/s/ Tracey T. Barbaree
Tracey T. Barbaree
Counsel for Plaintiff